# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### May 14, 2002 Session

## STATE OF TENNESSEE v. CLYDE RANDALL SCIVALLY

**Direct Appeal from the Circuit Court for Franklin County**
**No. 12,593     J. Curtis Smith, Judge**

—————————————

### No. M2001-02261-CCA-R3-CD - Filed July 15, 2002

—————————————

The defendant and co-defendant were indicted for possession of over .5 grams of cocaine with intent to sell and possession of drug paraphernalia. A Franklin County jury convicted the defendant of the lesser-included offense of simple possession of cocaine and acquitted him of possession of drug paraphernalia. The co-defendant was convicted of both indicted offenses. In this appeal, the defendant contends the evidence was insufficient to sustain his conviction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Robert S. Peters, Winchester, Tennessee, for the appellant, Clyde Randall Scivally.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; James Michael Taylor, District Attorney General; and Bill Copeland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Winchester Drug Enforcement Officer Danny Mantooth testified he and other officers executed a search warrant at Room 22 of the Economy Inn located in Winchester at approximately 9:15 p.m. on August 23, 1998, pursuant to information he had obtained from a confidential informant. Officer Mantooth stated the door to Room 22 was open and someone exited the room, so they entered through the open door and announced they were police officers. He stated that when they entered, the defendant was seated in a chair, and co-defendant Marcus Wade was seated on the bed. Officer Mantooth further testified they saw six cocaine rocks on a night stand stationed between the defendant and the co-defendant and a crack pipe underneath the bed. On cross-

examination, Officer Mantooth stated that they recovered no currency from the room and that the defendant and co-defendant denied ownership of the drugs.

Winchester Officers Tommy Brazelton and Randy Wilkerson, who assisted in the execution of the August 23rd search warrant, corroborated Officer Mantooth's testimony. Officer Brazelton additionally stated he recognized the person who exited the room prior to the search to be Wallace Taylor, a known drug dealer. Officer Wilkerson testified both defendants were "[w]ithin an arm's reach" of the cocaine on the night stand.

The defendants stipulated the substance recovered was .6 grams of cocaine.

George Larkin, the defendant's uncle, testified for the defense that he instructed the defendant to attempt to locate his stolen rifle. He stated approximately one month later, the defendant told him he thought he had found the rifle but its possessor wanted $150 for it. Larkin stated he instructed the defendant to repurchase it for up to $100, and he opined that was the reason the defendant was at the Economy Inn.

Randall Robert Scivally, the defendant's father, testified the co-defendant called asking for his son several times in August of 1998, and the co-defendant left his name, hotel location, and phone number, with the instruction that the defendant return his call. The defendant's father further testified the co-defendant left one message instructing him to tell the defendant he's "got what [the defendant] wants."

The defendant testified he and Wayne Mooney drove to Winchester to purchase food on August 23rd. The defendant stated that while in the grocery, he saw Officer Mantooth and greeted him. The defendant further testified that when he and Mooney left the grocery, he decided to stop by the Economy Inn so he could repurchase the rifle from the co-defendant. He explained the co-defendant had previously offered to sell him the gun and said he was staying at the Economy Inn. The defendant stated Mooney remained in the vehicle. As the defendant entered Room 22, Wallace Taylor exited. He testified he offered the co-defendant $50 for the gun; he heard knocking at the door; he opened the door; and officers entered and told him to sit down. The defendant stated he possessed neither the cocaine nor the pipe and had no intention of delivering or selling cocaine.

On cross-examination the defendant conceded the gun he sought to purchase was not located at the motel, and he had no money on him when he was arrested. The defendant further conceded that although Wallace Taylor was not his "personal close friend," he sent Taylor a letter in prison on July 6, 2000, containing $20, which instructed him to "[u]se this money wisely . . . [and he would] try to do this two or three times a month." The letter additionally inquired as to what Taylor was "going to say in court." The defendant conceded he sent Taylor an additional letter which was received on July 18, 2000, containing another $20, which stated, "Larry Davis wants to know what I know about a guy with a cut throat, but I've said nothing. Don't worry!" The letter was signed, "Your old buddy." The defendant explained that he was not "trying to buy Mr. Taylor off."

Co-defendant Marcus Wade testified he was living at the Inn in August of 1998, and he knew the defendant through Wallace Taylor, who was living in Room 25. Wade stated that on the evening of August 23rd, he was informed the defendant was coming to his room, and when he met the defendant at his door, the defendant said he was looking for Taylor so he could purchase crack cocaine and marijuana. Wade testified that when he told the defendant that Taylor was gone and Wade had no drugs to sell, Taylor rode up on a bicycle. Wade further testified they entered his room; the defendant gave Taylor $50 in exchange for the drugs; Taylor exited the room about fifteen minutes later; and the officers immediately entered the room. Wade stated he was not there to sell drugs, and the defendant never mentioned anything about a rifle.

As stated, the defendant was convicted of simple possession of cocaine, and the co-defendant was convicted of possession of over .5 grams of cocaine with the intent to sell and possession of drug paraphernalia.

## SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to establish he had constructive possession of the drugs. We disagree.

### A. Standard of Review

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

### B. Possession of Drugs

It is an offense to knowingly possess a controlled substance without proper authorization. Tenn. Code Ann. § 39-17-418(a). "Possession" may be sole or joint; thus, more than one person can be considered in possession of the same drugs. *See* State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). "Possession" may also be actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). To prove constructive possession, the state must establish the defendant had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others. *Id.*; State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997). Mere presence in the area of the drugs or association with those possessing drugs is not alone sufficient to establish constructive possession. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).

## C. Analysis

When the officers served the search warrant, they observed the defendant sitting beside six cocaine rocks on a night stand, approximately "an arm's reach" from the defendant. The co-defendant testified the defendant purchased the cocaine from Wallace Taylor for $50 just prior to the arrival of the police. Although the defendant testified he was there to buy back the rifle for $50, he had no money at the time of his arrest. Further, the defendant's testimony as to his location when the officers entered the room was inconsistent with the officer's testimony, as was the defendant's testimony about when Taylor exited the room. The jury also had the right to consider defendant's payments and correspondence to Wallace Taylor as incriminating. *See* State v. Maddox, 957 S.W.2d 547, 552 (Tenn. Crim. App. 1997) (noting any attempts by a defendant to suppress the testimony of a witness is a relevant circumstance from which guilt may be inferred). The evidence supports a finding of constructive possession; the evidence sufficiently corroborates the testimony of the co-defendant. *See* Shaw, 37 S.W.3d at 903.

The defendant contends the evidence is insufficient because the jury rendered an inconsistent verdict, finding the co-defendant guilty of the indicted offense of possession with intent to sell or deliver over .5 grams of cocaine, while finding the defendant guilty of simple possession. The defendant contends "[t]he jury's verdict only makes sense if the jury considered the cocaine to be that of the co-defendant." We do not necessarily agree that the verdicts were inconsistent. Regardless, even if the verdicts were inconsistent, consistency in verdicts is not required provided the evidence establishes guilt of the offense upon which the conviction was returned. *See* State v. Wiggins, 498 S.W.2d 92, 94 (Tenn. 1973); State v. Hayes, 7 S.W.3d 52, 57 (Tenn. Crim. App. 1999). As stated, the evidence here was sufficient to support the jury's finding that the defendant possessed cocaine.

We affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE